Mrs. Gorman RILEY et vir, Appellants,

v.

Donald R. CROSSLEY et ux., Appellees.

No. 14415.

Court of Civil Appeals of Texas.

Houston.

Oct. 8, 1964.

Rehearing Denied Oct. 29, 1964.

Gorman Riley, pro se.

Don Weitinger, Talbert, Giessel, Cutherell, Barnett & Stone, Houston, for appellees.

BELL, Chief Justice.

Appellants sought to recover damages for personal injuries alleged to have been suffered by Mrs. Riley when an automobile driven by Mrs. Crossley ran into the rear of the automobile occupied and driven by Mrs. Riley. The jury acquitted Mrs. Crossley of all asserted acts of negligence and found no damages. Judgment was rendered for appellees.

The jury found Mrs. Crossley did not fail to keep a proper lookout; did not operate her automobile at an excessive rate of speed; and did not fail to make proper application of the brakes. The jury also acquitted Mrs. Riley of any act of contributory negligence and found the collision was the result of an unavoidable accident.

Appellants attack the answer of the jury to each issue inquiring of negligence on the part of Mrs. Crossley; in finding the accident was an unavoidable one; and, in finding no damage, on the ground that each answer is so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust. This requires an examination of all of the evidence. In Re King's Estate, 150 Tex. 662, 244 S.W. 2d 660.

Mrs. Riley and Mrs. Crossley were the only witnesses testifying to how the collision occurred. Mrs. Riley testified it occurred August 23, 1958, on Fannin Street in Houston. She was on her way to take a friend, who was in St. Luke's Hospital, a gift. The collision occurred in the morning time. It had been raining and the streets were wet. It had been raining hard but at the time of the collision she said she did not particularly recall how hard it was raining but she thought it was only misting. She did not recall whether her windshield wipers were being used. The street was black-top and she said it probably got slick when wet. Another automobile had stopped in front of her preparatory to turning into the street that leads to the left, or east, toward Hermann Hospital. She was in the lane next to the esplanade. She stopped behind the other automobile. She did not know how long she had been stopped when her automobile was hit from the rear. She had her foot on the brake. She looked in her rear view mirror. She saw Mrs. Crossley look up suddenly. The Crossley car was coming very fast and crashed into the rear of her car. She could not say how far the Crossley car was from her when she first saw it. She could not estimate the speed of the Crossley car but stated it was too fast for a slick street. She then said she guessed it was exceeding the speed limit; that is, going over 30 miles per hour. It did not appear to her that Mrs. Crossley "pumped" her brakes because there was no decrease in the speed after she observed Mrs. Crossley. Mrs. Riley's head was thrown back against her back. Her car was pushed forward into the car ahead of her and her head was thrown forward onto her chest. North of the point of the collision about a block was a traffic control signal.

The above is the substance of Mrs. Riley's testimony as to how the collision occurred.

Mrs. Crossley testified she had stopped for the red light north of the point of the collision. She was heading south. She started up and about a quarter of a block behind the automobile she observed ahead of her she realized the automobile was stopped. She applied her brakes and her car slid; she applied them again and she slid into Mrs. Riley's car. She knew when she was at the light there was traffic up ahead but she did not know it was stopped. She had a vague idea there was traffic ahead but it was raining quite hard at the time. She did not know how fast she was going but thought she got up to about 20 miles per hour as a maximum speed. She then said she was going between 15 and 20 miles per hour. She never got over 30 miles per hour. She never saw Mrs. Riley's brakes on, or any hand signal. The application Mrs. Crossley made of her brakes did not slow her down "a whole lot." If she looked down before the collision it was just after she applied her brakes first and when she slid she could have looked to see if something might have been wrong with the brakes. She didn't make an effort to turn to the right or left because traffic was on her right and the esplanade was to her left. There was no place to go.

The evidence raised fact issues that were determined by the jury. We may not, even though we should disagree with the jury, substitute our judgment for its. We have the authority only to set aside the findings and grant a new trial in those instances where the jury's answers are so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong or manifestly unjust. Continental Bus System, Inc. v. Biggers, Tex. Civ.App., 322 S.W.2d 1, ref., n. r. e. Each case must be determined in the light of the particular facts. We are unable, in the light of all the evidence, to say that any of the jury's answers are so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong or manifestly unjust.

The complaint with regard to the jury's answer finding no damage becomes immaterial in the light of our holding that

the jury's answers to the liability issues are sufficiently supported by the evidence. Southern Pine Lumber Co. v. Andrade, 132 Tex. 372, 124 S.W.2d 334, opinion adopted by Supreme Court. We will say, however, we have read the entire testimony relating to injuries and damage and we cannot say the finding of the jury is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong.

The authorities relied on by appellants are factually distinguishable from the case before us.

The judgment of the trial court is affirmed.