FARMERS AND MERCHANTS STATE
BANK OF KRUM, Petitioner,

v.

Earnest FERGUSON, Respondent.

No. B–9857.

Supreme Court of Texas.

May 20, 1981.

Rehearing Denied July 17, 1981.

Royce Coleman, Denton, Kenneth C. Raney, Jr. (On appeal only), Houston, for petitioner.

Kelsey, Wood, Gregory & Banks, R. William Wood, Ronald L. Phillips and Richard Kelsey, Denton, for respondent.

GREENHILL, Chief Justice.

Earnest Ferguson brought this action against the Farmers and Merchants State Bank of Krum for the wrongful dishonor of checks. The suit was brought under both the Business and Commerce Code, section 4.402,[1] and the Deceptive Trade Practices Act, hereinafter called DTPA.[2]

Our holdings are that recovery cannot be had under the DTPA as it was written when these facts arose. The plaintiff does recover, however, under the provisions of the Business and Commerce Code, section 4.402.

With regard to DTPA, our holding is that the burden of proof is on the plaintiff, Ferguson, to prove that he was a "consumer." That, in turn, depends on proof that the bank account in question was not for business or commercial use. Since Ferguson did not establish this, he is not a "consumer." *Greene v. Bearden Enterprises, Inc.*, 598 S.W.2d 649 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n. r. e.).

Trial was to a jury which found for Ferguson. The trial court disregarded the jury's findings on mental anguish and rendered judgment for Ferguson for treble the remaining damages plus attorney's fees under the DTPA.

The court of civil appeals reformed the judgment of the trial court by adding trebled damages for mental anguish. 605 S.W.2d 320. We reform the judgment of the court of civil appeals and, as reformed, affirm.

Earnest Ferguson, a young pharmacist, obtained several loans from 1974 to 1976 from the Farmers and Merchants State Bank of Krum, Texas, to open and operate a drug store in Krum. The loans were secured by the inventory and fixtures in

Ferguson's store, City Drug. Ferguson had two checking accounts at the Bank. One was in the name of City Drug, a sole proprietorship, and the other was his personal or household account. Ferguson paid himself a salary, based in part on his needs, by writing a draft on the City Drug account and depositing the money in his personal account.

City Drug was not as profitable as Ferguson desired. In March 1977, he formed a partnership with another pharmacist; and they opened a new store in Lake Dallas. Ferguson informed the Bank of his plans. He originally planned to keep the store in Krum open by the use of part-time employees while he was at the store in Lake Dallas. He decided to close City Drug in Krum in April of 1977. It was closed on May 1, 1977.

Not all of the inventory and fixtures of City Drug were needed in the Lake Dallas store. Some of the inventory was sold to a third party and some was moved to Lake Dallas. The move was on the basis of need in Lake Dallas, or when Ferguson had time.

The Bank knew of Ferguson's plans to sell part of the inventory and move the rest. It gave him permission to do so. The Bank asked Ferguson to supply it with a listing of the inventory which was moved.

Without notice to Ferguson, the Bank froze the funds in the City Drug account on about May 4. The inventory and the move were not completed at the time that the account was frozen, although the City Drug Store was closed.

On May 4, 1977, Ferguson, who did not know of the Bank's freeze, made a deposit of $4,852.45 to the City Drug account. The funds were received from the bulk sale of drugs.

After May 4, Ferguson wrote several checks. Only a few checks written by Ferguson on the City Drug's account were honored by the Bank after May 4. One of these was a salary withdrawal of $500.00 made by Ferguson while Ferguson was in

1. All citations are to the Texas Business and Commerce Code.

2. Section 17.41 et seq.

the Bank. Bank balance sheets in the record indicate that there were other checks which were dishonored during the period after May 4. The Bank also withdrew $200.00 to apply towards loan repayments on May 20 and June 3.

The total balance in the account at all times after May 4, 1977, and until June 6, exceeded $7,000.00; i. e., there were always sufficient funds on deposit to pay all checks drawn by Ferguson. On June 6, 1977, Ferguson paid the balance of the City Drug loans. Because the account had been frozen, Ferguson could not get a loan from another bank in Lake Cities. He paid off the loans with money borrowed from his father.

None of the checks which were dishonored were for more than the balance in the account. The Bank had not dishonored City Drug's checks even when the account was overdrawn in the past, because of an agreement between Ferguson and the Bank.

Ferguson's case, therefore, is that the Bank led him to believe that his City Drug account was active and well while it was in fact frozen. The Bank, while the account was frozen, accepted his deposits and even allowed him to withdraw some funds from the "frozen" account.

Ferguson tried this case as both a suit for wrongful dishonor and for recovery under the Deceptive Trade Practices Act. At the time that this case arose, "consumer" was defined in section 17.45(4) of the DTPA as "an individual, partnership or corporation who seeks or acquires by purchase or lease, any goods or services." "Services" was defined in section 17.45(2) as "work, labor, or service purchased or leased for use for other than commercial or business use, including services furnished in connection with the sale or repair of goods." The 1977 amendments deleted the phrase, "for other than commercial or business use."

■ The plaintiff has the burden of proof on all elements of his cause of action under the DTPA. This includes proof that he was a consumer. In *Greene v. Bearden Enterprises*, 598 S.W.2d 649 (Tex.Civ.App. —Fort Worth 1980, writ ref'd n. r. e.), the court held that because the plaintiffs did not distinguish between services rendered for personal use and those rendered for business use, they did not adequately carry the burden on showing that they were consumers.

In this case, no issue was submitted to the jury inquiring whether the banking services rendered were for business or personal use. Since the burden was on the plaintiff, the Court of Civil Appeals incorrectly placed the burden on the defendant Bank to show that the services were not for personal use.

■ The Bank argues that there is no evidence that the services rendered were for personal use. The account was carried in the name of City Drug. All of the *dishonored* checks offered into evidence were for business purposes. The honored checks offered into evidence were likewise for business purposes. Ferguson kept a personal account at the Bank independent of the City Drug account. Ferguson borrowed $2,000.00 for living expenses prior to the opening of the store. There is no evidence whether this $2,000.00 was deposited into Ferguson's personal account or the City Drug account. All of the evidence relating to loss of credit concerned business-related credit either with drug companies or with another bank in Lake Cities.

Ferguson argues that because he was the sole proprietor of City Drug, the funds were his personal property, and the banking services rendered were for personal and not business use. We disagree. Ferguson kept at least two accounts at the Bank: the City Drug account and his personal household account. In this way he at least recognized the separation of his business and personal finances.

There is no evidence in the record that the banking services involved in this case were for personal use. Ferguson is not a consumer within the DTPA and is not entitled to any recovery under the Act.

Section 4.402 concerns a bank customer's right to recover for wrongful dishonor of checks and provides:

A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. When the dishonor occurs through mistake liability is limited to actual damages proved. If so proximately caused and proved damages may include damages for an arrest or prosecution of the customer or other consequential damages. Whether any consequential damages are proximately caused by the wrongful dishonor is a question of fact to be determined in each case.

In this case, the jury found that there had been wrongful dishonor of various checks. No issue was submitted on "mistake." The jury also found that the damages proximately caused by the wrongful dishonor were $3,000.00 for loss of credit, $25,000.00 for mental anguish, $5,000.00 for loss of time, $354.56 for loss of money, and $1,500.00 for loss of use of money.

The Bank's defense to the freeze on the City Drug account and the consequential dishonor of some checks was the exercise of its lien on the proceeds from the sale of the inventory. Ferguson offered a trial amendment pleading that the Bank had waived its lien on proceeds. The trial court allowed the amendment, stating that the issue of waiver had been tried during the course of trial. The Court of Civil Appeals agreed, citing testimony that the Bank had given permission to sell or move the inventory. The Bank admits that it had given such permission, but argues that this does not waive its rights to the proceeds.

■ If the Bank was attempting to assert its rights in the proceeds, it must do so in an even-handed manner. However, the Bank did not uniformly assert this lien. The Bank put on no evidence to explain why some checks were honored and others were dishonored during the time when the freeze was supposed to be in effect. From the bank statement in evidence, it appears that four of five checks presented for payment on May 9 were dishonored, but one was paid; that all checks presented on May 10 were dishonored; that six of seven checks presented on May 11 were dishonored, but one was paid; that three of five checks presented on May 12 were dishon-

ored, and two were paid; that all checks presented on May 19 were dishonored. Actions inconsistent with the existence of the lien waive the Bank's right to assert the lien or security interest as a defense in this case.

The jury found Ferguson's damages for mental anguish to be $25,000.00. The Bank argues that damages for mental anguish are not recoverable where there has been a wrongful dishonor, and that there is no evidence to support such damages. Ferguson argues that damages for mental anguish are compensable under section 4.402. We agree. *Northshore Bank v. Palmer*, 525 S.W.2d 718 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n. r. e.).

■ Damages for mental anguish cannot be recovered absent a showing of an intentional tort, gross negligence, willful and wanton disregard, or accompanying physical injury. *Duncan v. Luke Johnson Ford*, 603 S.W.2d 777 (Tex.1980); *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931 (Tex.1980). In this case, Ferguson has alleged that the wrongful dishonor was "willful, malicious, fraudulent and oppressive." The jury has specifically found that the dishonor of the checks was accompanied by malice. Malice was defined in the trial court's charge as including "such gross indifference to the rights of another as will amount to a willful or wanton act done intentionally and without just cause or excuse."

The Bank urges that there is no evidence that it acted with malice. We disagree. The Bank cashed some of Ferguson's checks during the same period when it dishonored other checks. One of the checks honored was cashed by Ferguson in person at the Bank. He was not told at that time that other checks had been dishonored or that the account was frozen. The Bank also continued to withdraw loan payments due to it during the entire time. A jury could have found malice based on this and other evidence in the record.

■ The Bank also argues that there is no evidence in the record to support the

jury's findings on loss of credit, loss of time, loss of money, and loss of use of money. We disagree. Ferguson was denied at least one loan because of the Bank's "freeze" on his account. He lost time calling creditors and attempting to explain the situation to them.[3] There is evidence of loss of money in the penalty paid to the State Comptroller as a result of the Bank's dishonoring the check paying City Drug's sales tax. There is evidence of loss of use of money in testimony that his working capital and hence his store's inventory was depleted because of the dishonor of the checks.

The only claim which Ferguson makes for attorney's fees in this Court is under the DTPA. Our conclusion that he has no cause of action under the DTPA precludes him from recovering attorney's fees under the Act.

The judgment of the court of civil appeals is reformed so that the damages for -mental anguish, loss of credit, loss of time, loss of money, and loss of use of money are awarded in a total amount of $34,854.56, plus interest thereon at the rate of 9% per annum from August 31, 1979, until paid. As reformed, the judgment of the court of civil appeals is affirmed.

---

3. The only relevant point in this Court about "loss of time" as an element of damage is that there was no evidence of "loss of time." Since there was evidence of "loss of time," the point is overruled. The same is true of "loss of money" as an element of damage.