**BERRY CONTRACTING, INC.,**
Appellant,

v.

**COASTAL STATES PETROCHEMICAL
COMPANY, Appellee.**

No. 1953.

Court of Appeals of Texas,
Corpus Christi.

May 6, 1982.

Rehearing Denied June 3, 1982.

Gary Norton, Gary, Thomasson, Hall & Marks, Corpus Christi, for appellant.

David S. Gamble, Woodard, Hall & Primm, Houston, for appellee.

Before NYE, C. J., and YOUNG and GONZALEZ, JJ.

OPINION

GONZALEZ, Justice.

This is an appeal from a negligence suit. Coastal States Petrochemical Company sued Berry Contracting, Inc. for damages as a result of a shutdown of its refinery that occurred when a natural gas pipeline was ruptured by Berry. There were no loss profits, no loss sales or contracts. Coastal alleged that it was deprived of the use of its asset for 49 hours and that it was entitled to damages in an amount equal to the rea-

sonable market value of the use of that asset for that period. After a jury trial, judgment was granted to Coastal. Berry perfected this appeal. We reverse and render.

At the time of the occurrence in question, Coastal operated a refinery in Corpus Christi, Texas. The natural gas necessary for its operations was supplied through a 16 inch pipeline known as the "Old Humble Pipeline," owned by La-Vaca Gathering Company. On July 2, 1976, Berry, while in the process of laying a pipeline in Nueces County, struck and ruptured the "Old Humble Pipeline" causing a drop in the line pressure and flow to Coastal's refinery. With the loss of gas came a reduction in steam which caused a shutdown to a part of Coastal's refinery known as the "West Plant."

Coastal refined its own crude which it sold on the wholesale market and also refined crude for others. Pursuant to processing agreements, Coastal received quantities of crude oil for refining and delivered to the owner of the crude a representative range of processed petroleum products in return for the payment to Coastal of a processing fee for so much a barrel. Coastal alleged that as a result of Berry's negligence it was deprived of the use of its asset for 49 hours and sued for damages. Coastal stipulated that it was able to perform its existing contracts and to supply its existing markets. Specifically, Coastal stipulated that it did not suffer any loss profits, sales or contracts. Neither did they sue for any fixed costs such as labor costs during the shutdown.

The jury found that Berry was negligent, that its negligence proximately caused the shutdown of the West Plant for 49 hours and that the loss of the market value of the use of the West Plant amounted to Fifty Five Thousand Nine Hundred Eighty-Eight and 48/100 Dollars ($55,988.48). A judgment for this amount was granted to Coastal and Berry brings this appeal.

The sole question before us is whether the trial court erred in submitting the damage issue and in refusing to disregard the jury's answer to said issue as requested in Berry's Motion for Judgment Notwithstanding the Verdict.

Special Issue No. 4 is as follows:

"What sum of money, if any, do you find from a preponderance of the evidence would reasonably compensate the Plaintiff Coastal States Petrochemical Company for any loss of market value of the use of its West Plant proximately caused by the negligence, if any, of Defendant Berry Contracting, Inc.

Answer in dollars and cents, if any.

Answer: *$55,988.48*

Do not include any sum for any loss of market value of the use of the West Plant, if any, proximately caused by the failure, if any, of Coastal States Petrochemical to act to prevent, avoid, or reduce any such loss as a reasonably prudent person would have acted in the exercise of ordinary care under the same or similar circumstances.

In connection with this Special Issue, you are instructed that 'market value' means the price that will be paid for the use of refining services when offered for sale by seller who is willing to sell but is not obligated to sell and is bought by a buyer who is willing to buy but is under no necessity of buying."

In seven points of error, Berry asserts that the trial court committed error because:

(1) there is no evidence to prove the essential elements to recover damages measured by a loss of market value for the use of part of Coastal's oil refinery;

(2) because there is no evidence to prove the existence of an actual market for the use of Coastal's refinery on a daily and/or hourly basis for as few as 49 hours;

(3) because the evidence is undisputed and conclusive as a matter of law that no market existed for the selling of the use of Coastal's refinery for a period of less than one month during 1976;

(4) because there is no evidence of the existence of a steady demand for the use of Coastal's refinery that required the operation of Coastal's refinery at full capacity before, during and/or after the period when part of its refinery was temporarily shutdown;

(5) because the evidence is undisputed and conclusive as a matter of law that Coastal's refinery never operated and never had demand for its use anywhere near its full capacity, during and/or after the period when part of its refinery was temporarily shutdown;

(6) because there is no evidence that is legally probative to prove that Coastal suffered an actual loss in the market value of the use of part of its refinery; and

(7) because there is no evidence that Coastal sustained any actual loss of damages.

The only witness who testified as to the alleged damages was John Eklof, an assistant vice president of Coastal. Eklof testified that there was a general market for the rental of refinery services at the time of the occurrence in question. However, the industry practice was that independent refiners such as Coastal would not enter into a refinery service contract for a period of less than one month. He further testified that Coastal would not enter into a service contract for a period of less than one month. He also stated that the rental value of the use of the refinery for a period of less than one month would be prohibitive.

Eklof theorized that the rental market value of the West Plant for 49 hours was a certain amount by extrapolating refinery production and probability figures and fees charged by Coastal to Texaco on a three year processing agreement. Berry, therefore, argued that there was no basis for the submission of the damage issue to the jury and that its answer should have been disregarded by the court.

■ When a defendant's negligence results in an interference with the use of plaintiff's property, the plaintiff is entitled to recover the value of the use during the interference. *Gray County Gas Co. v. Oldham,* 238 S.W.2d 596 (Tex.Civ.App.—Amarillo 1951, no writ). Damages will be allowed only when profits have actually been or may be reasonably supposed to have been lost. *Skou v. United States,* 478 F.2d 343 (5th Cir. 1973). In determining damages, it is not essential that they be proven with absolute certainty. They need be proved only with reasonable certainty. *Texas Tool Traders, Inc. v. Mosley Machinery Company,* 422 S.W.2d 229 (Tex.Civ.App.—Waco 1967, no writ). However, the damages must be susceptible of ascertainment in some manner other than by mere speculation, conjecture or surmise and by reference to some fairly definite standard, such as market value, established experience or direct inference from known facts. 22 Am. Jur.2d Damages § 25.

"There can be no 'market value', accurately speaking, in the absence of a market; which is to say there can be no market value of property at a given time and place if there have been no sales of any property of like kind and quality and in sufficient quantity to establish a prevailing sales price of such property." *Foley Brothers Dry Goods Co. v. Settegast,* 133 S.W.2d 228, 232 (Tex.Civ.App.—Galveston 1939, writ ref'd).

■ Coastal argues that notwithstanding the lack of a market for processing time for periods of less than 30 days, this case should be affirmed based on the principles announced in *Skou v. United States,* supra, and 526 F.2d 293 (5th Cir. 1976). Specifically, Coastal argues that it need prove only that profits have actually been or may be reasonably supposed to have been lost. However, in the case at bar, Coastal stipulated that its claim for damages did not include any lost profits. Further, the measure of damages pled by Coastal and submitted to the jury was to be *"any loss of market value for the use of the West Plant." Coastal further contended that its loss of the fair market value of the West Plant was "equal to the sum of money for which it could have rented the processing*

*services for its West Plant for 49 hours."* There is no evidence that Coastal could have actually rented the West Plant for 49 hours; no evidence that there was a "market" in the industry for refining services for 49 hours and Coastal's expert witness testified that Coastal had never entered into a contract for refining services for less than a thirty-day period. In summary, there is no evidence that a willing buyer could reasonably have existed to buy refining services which Coastal concedes would have been prohibitively expensive and, therefore, it was error to submit the issue to the jury.[1]

■ Coastal further contends that a loss may be proven by the evidence that the asset, the use of which was lost, was "active in a ready market." Activity in a ready market may be proven to exist during the time the asset is unusable by evidence that an opportunity existed to accrue earnings from the asset, and that its owner would have availed itself of this opportunity. The evidence in the case at bar is conclusive that no market existed in the industry for refining services for such a short period.

Coastal next relies on language in the second *Skou* case that if a ship whose use was lost "was in immediate demand ... upon its return to service" this indicates "that profits may be reasonably supposed to have been lost because the vessel was active in a ready market." Since Coastal continuously refined its own crude or others' crude under processing agreements after the plant was back in operation, Coastal concludes that the West Plant was in immediate demand upon its return to service and was therefore active in a ready market. However, the relevant market pled by Coastal is a demand for refining services for a period of 49 hours and not the demand for refinery services for a month or longer nor for the sale oil in a ready market.

Coastal failed to sustain its burden of proof with a reasonable degree of certainty

on the theory on which this case was tried. There is no evidence to support the submission of Special Issue No. 4. Therefore, appellant's points of error number 1, 2, 6 and 7 are sustained.

We have reviewed Coastal's cross-point and find that it is without merit. The excluded exhibit is not relevant to issues submitted to the jury and, therefore, the court was correct in excluding the exhibit. Coastal's cross-point is overruled.

The judgment of the trial court is reversed and a take nothing judgment is here rendered.

---

1. Coastal clearly lost the use of their capital investment for 49 hours as a result of Berry's negligence with no return. However, Coastal did not plead nor did it offer any evidence of the amount of profit that Coastal would have earned if the plant had not been shutdown and they had processed and sold their own crude at a readily available market. See: *Continental Oil Company v. S. S. Electra*, 431 F.2d 391 (5th Cir. 1970), *cert. denied*, 401 U.S. 937, 91 S.Ct. 925, 28 L.Ed.2d 216 (1971).