**James Patrick ROBERTS, Appellant,**

v.

**U.S. HOME CORPORATION, Appellee.**

**No. 04–83–00415–CV.**

Court of Appeals of Texas,
San Antonio.

May 15, 1985.
Rehearing Denied June 10, 1985.

Thomas C. Hall, San Antonio, August C. Toudouze, Houston, for appellant.

Patrick H. Sheehan, Mary L. Brennan, Cox & Smith, San Antonio, for appellee.

Before CADENA, C.J., and BUTTS and REEVES, JJ.

## OPINION

REEVES, Justice.

This appeal is taken from a take-nothing judgment. The basis of recovery asserted is common law fraud.

James Patrick Roberts purchased a home in a subdivision owned by U.S. Home Corporation (U.S. Home). At the closing on the house on March 6, 1978, Roberts executed a note in the amount of $42,000.00 payable to a savings and loan association, a note for $1.00 payable to Homecraft Corporation, and a promissory note payable to bearer in the amount of $4,950.00. The latter note served as a downpayment for the house. Prior to closing, the salesman for U.S. Home, Dennis Hovermale, gave Roberts a check drawn on a U.S. Home-Central Texas account for $4,950.00 with Roberts as payee. Roberts endorsed the check which Hovermale then exchanged for a cashier's check payable to the title company with Roberts as remitter. Roberts alleges that Hovermale represented to him that he would never have to repay the $4,950.00 promissory note.

Although Roberts made payments on the $42,000.00 note, he never made payment on the $4,950.00 note. He received two demand letters from U.S. Home. Roberts did not contact any person connected with U.S. Home about these letters; he did talk with Hovermale who was no longer employed with U.S. Home. On December 11, 1978, U.S. Home filed suit against him on the note. Roberts filed a response; the matter was still pending at the time this case went to trial.

Roberts brought suit against U.S. Home under the Texas Deceptive Trade Practices Act and for common law fraud.[1] Trial was

---

1. Roberts' appeal is based solely on the cause of action for common law fraud.

before a jury. The jury answered seventeen special issues as follows:

## "SPECIAL ISSUE NO. 1

"Do you find that Dennis Hovermale did one or more of the following:

a) Made false or misleading statements of fact to the Plaintiff, James Patrick Roberts, concerning the reasons for, existence of, or amount of price reductions? Answer: *Yes*

b) Represented to the Plaintiff, James Patrick Roberts, that an agreement confers or involves rights or obligations which it does not have or involve? Answer: *Yes*

## "SPECIAL ISSUE NO. 2

"[Conditioned on an affirmative finding in special issue number one]

"Do you find that the act inquired about was the proximate cause of actual damage, if any, to James Patrick Roberts, with respect to:

"[Acts inquired of in special issue number one; the jury responded 'yes' to both 'a' and 'b']

## "SPECIAL ISSUE NO. 3

"Do you find that on or before March 6, 1978, Dennis Hovermale represented to the plaintiff, James Patrick Roberts, that he would never have to make payments under the $4,950.00 promissory note?

"Answer: *Yes*

## "SPECIAL ISSUE NO. 4

"[Conditioned on special issue number three]

"Do you find that the representation of Dennis Hovermale inquired about in Special Issue No. 3 was a false, misleading or deceptive act or practice?

"Answer: *Yes*

"[Instruction as to definition of 'false, misleading or deceptive act or practice' omitted]

## "SPECIAL ISSUE NO. 5

"[Conditioned on special issue number four]

"Do you find that the representation inquired about in Special Issue No. 3 was a proximate cause of actual damages, if any, to the plaintiff, James Patrick Roberts?

"Answer: *Yes*

## "SPECIAL ISSUE NO. 6 .

"[Conditioned on special issue number five]

"Do you find that the representation inquired about in Special Issue No. 3 was false?

"Answer: *Yes*

"In connection with Special Issue No. 6, you are instructed as follows:

A representation may be 'false' if at the time the maker made the representation he knew the representation to be false. A representation may also be false even though the maker may not know the same is false if the maker makes the statement recklessly without knowledge of its truth.

## "SPECIAL ISSUE NO. 7

"[Conditioned on special issue number six]

"Do you find that the representation inquired about In Special Issue No. 3 was a material representation of fact and made for the purpose of inducing James Patrick Roberts to purchase the house in question?

"Answer: *Yes*

## "SPECIAL ISSUE NO. 8

"[Conditioned on special issue number seven]

"Do you find that the representation inquired about in Special Issue No. 3 was relied upon by James Patrick Roberts when he purchased the house in question?

"Answer: *Yes*

"SPECIAL ISSUE NO. *9*

"[Conditioned on special issue number eight]

"Do you find that the representation inquired about in Special Issue No. *3* was made recklessly or was known by Dennis Hovermale to be false at the time it was made?

"Answer: *Yes*

"SPECIAL ISSUE NO. *10*

"[Conditioned on special issue number nine]

"Do you find that the representation inquired about in Special Issue No. *3* was the proximate cause of actual damages, if any, sustained by the plaintiff, James Patrick Roberts?

"Answer: *Yes*

"SPECIAL ISSUE NO. *11*

"[Conditioned on special issue number ten]

"Do you find that the defendant, U.S. Home Corporation, authorized, ratified or approved the representation of Dennis Hovermale to the plaintiff, James Patrick Roberts, that he would never have to make payments on the $4,950.00 promissory note?

"Answer: *No*

"[Instructions defining 'ratification' and 'authorized' omitted]

"SPECIAL ISSUE NO. *12*

"[Conditioned on special issue number three]

"Do you find that at the time of the representation made by Dennis Hovermale to the plaintiff, James Patrick Roberts, concerning never having to make payments on the $4,950.00 promissory note, that Dennis Hovermale was acting with apparent authority on behalf of defendant U.S. Home Corporation?

"Answer: *Yes*

"[Instruction on 'apparent authority' omitted]

"SPECIAL ISSUE NO. *13*

"Find from a preponderance of the evidence the difference in value between what the plaintiff, James Patrick Roberts, parted with to purchase the home and the fair market value of the home received.

"Answer in dollars and cents, if any.

"Answer: *–0.00*

"In connection with Special Issue No. *13*, you are instructed as follows:

'Market value' means the amount that would be paid in cash by a willing buyer who desires to buy, but is not required to buy, to a willing seller who desires to sell, but is under no necessity of selling.

"SPECIAL ISSUE NO. *14*

"[Conditioned on affirmative finding on any subdivision of special issue number two or affirmative finding in special issue number five]

"Do you find that Dennis Hovermale acted with intent to injure, with malice, or in a willful and wanton disregard of the rights of the plaintiff, James Patrick Roberts?

"Answer: *No*

"In connection with Special Issue No. *14* you are instructed as follows:

'Malice' means such gross indifference to the rights of another as will amount to a willful or wanton act done intentionally and without just cause or excuse.

"SPECIAL ISSUE NO. *15*

"Find from a preponderance of the evidence what sum of money, if any, paid now in cash, would fairly and reasonably compensate plaintiff, James Patrick Roberts, for his mental anguish, if any, proximately resulting from the representation, if any was made, complained of in Special Issue No. *3*.

"In considering 'mental anguish' do not include any amount for mere worry, anxiety, vexation or anger.

"Answering in dollars and cents, if any.

"Answer: *$10,000*

In special issue number sixteen, the jury assessed $20,000.00 exemplary damages against U.S. Home. In special issue number seventeen, the jury awarded $10,750.00 for attorneys fees.

U.S. Home moved for judgment on the verdict. U.S. Home urged that the special issue findings of the jury supported a judgment in favor of U.S. Home that Roberts take nothing by his suit. U.S. Home stated in its motion:

> The jury specifically found in response to the special issues submitted that there were no actual damages sustained by Plaintiff, that the actions of Dennis Hovermale were not made with intent to injure, with malice or in a willful and wanton disregard of the rights of Plaintiff, and that Defendant did not authorize, ratify or approve the representations of Dennis Hovermale.

U.S. Home's motion for judgment on the verdict was granted.

Roberts asserts six points of error and U.S. Home presents twelve cross-points of error.

In Roberts's first point of error, he asserts that the trial court erred in failing to submit a requested special issue asking what sum of money would compensate him for injury to his credit resulting from Hovermale's representation that it was not necessary that he make payments on the $4,950.00.

■ A trial court should submit a requested issue if there is any probative evidence to support an affirmative finding. *Huckaby v. Henderson*, 635 S.W.2d 129, 131 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). Even if the evidence is insufficient to sustain an affirmative answer to the issue, the trial court is still obligated to submit the issue if there is evidence amounting to more than a scintilla. *Wenzel v. Rollins Motor Co.*, 598 S.W.2d 895, 902 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r.e.).

Roberts testified that after U.S. Home filed suit to collect on the $4,950.00 promissory note, he began experiencing credit problems. He applied for and was initially refused American Express, Carte Blanche, and Mastercharge credit cards. After consultation with the lenders, he was able to obtain the cards. He was initially refused a loan to purchase a residence but after hand-carrying an explanatory letter concerning the U.S. Home suit from his home in Garland, Texas, to the Veteran's Administration in Waco he was approved for the loan.

Roberts met with an initial refusal when he attempted to borrow from his bank $2,000.00 for draperies. He ultimately obtained the loan but had to put up a "CD" for collateral. The lender told him that the denial was based on his credit report. The same bank refused to loan Roberts $2,500.00 for a new boat. He changed banks and obtained the loan. Roberts testified he prepared a file with information about the U.S. Home suit and carried it with him in subsequent negotiations for a $25,000.00 credit line for a convenience store he was opening and for an $8,000.00 car loan. Both the credit line and the car loan were obtained.

As Roberts was never denied any credit after his problems with U.S. Home arose, U.S. Home takes the position that Roberts suffered no damage or injury whatsoever to his credit.

■ Credit is defined as the ability of a business or person to borrow money, or obtain goods on time, in consequence of the favorable opinion held by the particular lender as to solvency and reliability. BLACK'S LAW DICTIONARY 331 (rev. 5th ed. 1979).

■ If one could obtain a loan from a bank without collateral prior to a disagreement with a creditor, and then subsequent to the disagreement, one is able to obtain the loan only if collateral is given or other conditions imposed, that individual's credit has been injured.

■ However, in this cause, the evidence presented by Roberts is insufficient to warrant the requested special issue. The crucial inquiry is whether credit problems

were different from any experienced by Roberts prior to his disagreement with U.S. Home.

Roberts testified about his prior credit history. In response to his attorney's question, "Had you had any prior credit problems?" Roberts said, "Well, everyone has had credit problems from time to time, but I have always paid my obligations. I have never had a repossession in my life. I have never welched on a deal that I made." He also testified generally that he had never had "problems getting credit cards or credit" before the entanglement with U.S. Home. There is no definite evidence that Roberts could have received a loan without initial refusals or without posting a "CD" as collateral prior to his disagreement with U.S. Home.

This testimony does not provide an adequate depiction of Roberts's credit standing prior to the filing of suit by U.S. Home to enable a fact finder to ascertain if injury has occurred. Stating that one has never had problems securing credit is not the equivalent of establishing that one could secure loans without collateral or other conditions, or without initial refusals.

■ There can be no recovery for damages which are speculative or conjectural. *Berry Contracting, Inc. v. Coastal States Petrochemical Co.*, 635 S.W.2d 759, 761 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). *See McIver v. Gloria*, 140 Tex. 566, 169 S.W.2d 710 (1943) (loss of earning capacity best shown by comparing actual earnings before and after injury); *Village Square Ltd. v. Barton*, 660 S.W.2d 556 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.) (loss of value of business impossible to ascertain without facts, figures, and data of the "going business" to compare with the present one).

■ Roberts's requested special issue was narrowly drawn in that it asked for monetary compensation for loss attributable to injury to credit, if any, resulting from the representations of Hovermale that no payment would be required on the note for $4,950.00. There was no request for an issue on loss of time. Injury to credit does not include loss of time. *Farmers & Merchants State Bank of Krum v. Ferguson*, 617 S.W.2d 918 (Tex.1981) recognizes the distinction between the two concepts. In *Ferguson* there was a separate monetary recovery for loss of credit and another award for loss of time. Separate issues were submitted.

■ Further, Roberts's assertion of injury to his credit suffers from a causation problem. Even if injury to credit had been demonstrated, the credit report is not in evidence although Roberts testified he had obtained a copy from the Credit Service Bureau in Dallas.

According to Roberts, the reason given by some of the lenders for their initial refusals to him was the credit report. However, no lender stated that refusal of a credit card or loan was specifically because of a report made by U.S. Home. It was, therefore, impossible for the fact finder to know if all refusals and subsequent negotiations resulted from a credit report made by U.S. Home, or if there were other items on the report which would have resulted in denial of credit.

■ Roberts testified that in negotiations with bank officers and the V.A. Administration, the only questions directed to him concerned the suit by U.S. Home. This is not evidence, however, of causation as to the refusals or other injuries to credit. We cannot infer from the nature of the discussions with bank officials an inference that U.S. Home did in fact make a negative report on Roberts's credit history and that this report was the reason for denial of credit. An inference based upon an inference cannot constitute evidence to support a proposition. *Rounsaville v. Bullard*, 154 Tex. 260, 276 S.W.2d 791, 794 (1955).

U.S. Home denies Roberts's allegations that it ever reported to any person or entity that Roberts owed it money, that suit had been filed against Roberts, or that it made any negative comment on Roberts's credit standing.

The mere filing of a lawsuit, standing alone, cannot be considered evidence of an intentional act to injure another's credit.

Roberts argues in his reply brief that injury to his credit was factually caused not by the reporting of any credit information by U.S. Home, but rather by the misrepresentation of salesman Hovermale. "Had such representation never been made, the appellant would never have entered into the transaction in question, the note would not have been signed, the suit by U.S. Home Corporation against James Patrick Roberts would never have been filed, and appellant would never have endured any credit problems." Nonetheless, Roberts must present evidence to establish each link in his producing cause theory to justify a special issue on injury to credit. Specifically, he must show that his credit problems were in fact caused by U.S. Home. There is no evidence of this in the record.

Point of error number one is overruled.

In point of error number two, Roberts urges error by the trial court in failing to render judgment for $10,000.00 in damages for mental anguish, the amount found by the jury in special issue number fifteen. He asserts that such damages are properly recoverable in this cause in light of the jury's findings that the U.S. Home's agent, Hovermale, acted recklessly or knowingly in making the representation to Roberts that he would not have to repay the $4,950.00 loan (special issue number nine) and that such representation was the proximate cause of injury, if any, to Roberts (special issue number ten).

An award of damages for mental anguish is not recoverable as Roberts failed to present any evidence in support of such a finding. He testified that he felt "mad" about being sued and after being rejected for the V.A. home loan. He stated "it was embarrassing" for him to have to explain credit problems with various lenders, and "it was very embarrassing" for his new wife who had not been involved with the prior transaction with U.S. Home. Roberts testified that whenever he was turned down for a loan, he "felt like scum." Such feelings are legally insufficient to support an award for mental anguish.

Mental anguish includes keen and poignant mental suffering. See *Dennis Weaver Chevrolet, Inc. v. Chadwick*, 575 S.W.2d 619, 622 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.). To establish mental anguish, a plaintiff must show more than mere worry, anxiety, vexation, embarrassment, or anger. *K-Mart Corp. Store No. 7441 v. Trotti*, 677 S.W.2d 632, 639 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Freedom Homes of Texas, Inc. v. Dickinson*, 598 S.W.2d 714, 718 (Tex.Civ. App.—Corpus Christi 1980, writ ref'd n.r. e.).

> The term 'mental anguish' implies a relatively high degree of mental pain and distress. It is more than mere disappointment, anger, restraint or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotion as grief, severe disappointment, indignation, wounded pride, shame, dispair and/or public humiliation.

*Trevino v. Southwestern Bell Telephone Co.*, 582 S.W.2d 582, 584 (Tex.Civ.App.— Corpus Christi 1979, no writ).

The only words chosen by Roberts to express his feelings were that he was "embarrassed," "mad," and that he "felt like scum." This testimony does not depict the equivalent of a mental sensation of pain or distress.

Even if being "mad, embarrassed and feeling like scum" could be considered to rise to the level of mental anguish, Roberts's testimony as to these feelings was all related to his credit hassles. Thus, he faces the same causation problems discussed earlier. There was no proof offered that U.S. Home ever made a credit report to anyone concerning its lawsuit against Roberts. As previously stated, one cannot be penalized for the mere filing of a suit.

Point of error number three attacks the jury finding in special issue number thirteen that the difference in value between

what Roberts parted with to purchase the home and the fair market value of the home was the sum of zero. Specifically, point of error number three states:

> The District Court erred in not ruling that the Plaintiff was entitled to receive $4,950.00 as damages for the difference in value between what the Plaintiff received and what he gave in the purchase and sale of the home in question because the evidence is undisputed that the difference in value is $4,950.00.

■ The point of error is presented in terms of "undisputed evidence" and is logically construed as a "matter of law" contention. However, in his brief argument, Roberts discusses the factual insufficiency of the evidence, arguing that the jury's finding is against the great weight and preponderance of the evidence.

Whether we interpret the point of error as one directed to the legal or the factual sufficiency of the evidence, the jury finding has sufficient support in the evidence. The evidence of the value of what Roberts parted with to purchase the home and the value of what he received is as follows:

1. Roberts signed three notes at closing: $42,000.00 note to secure the deed of trust; $1.00 real estate lien note, and $4,950.00 promissory note. The total obligation, then, was $46,951.00.

2. However, Roberts made no payments on the $4,950.00 note and testified that it was his understanding he was under no obligation to do so.

3. Roberts testified that he felt the house to be worth "what I paid for it, forty-two thousand dollars."

4. At another point in the trial, he testified that the house was worth nothing to him, given the problems he had had.

5. Roberts testified that Hovermale represented to him that the sales price of the home was $42,000.00.

6. However, the loan closing statement, the disclosure/settlement statement, and the real estate sales contract state the sales price of the home to be $46,950.00.

■ There is some evidence that supports the jury finding of the difference in value to be zero. Thus, Roberts' point of error, if construed as a "no evidence" point, is without merit. Further, a jury finding will be set aside and a new trial ordered only if the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). Accordingly, we have no authority to set aside the jury's finding. *Riley v. Crossley*, 383 S.W.2d 427 (Tex.Civ.App.—Houston 1964, no writ).

Point of error number three is overruled.

■ In point of error number four, Roberts asserts error by the trial court in not trebling the $14,951.00 in actual damages pursuant to the Texas Deceptive Trade Practices Act. In point of error number five, Roberts contends he should have been awarded attorney's fees under the DTPA. These points of error are dependent upon the sustaining of points of error two and three so as to entitle Roberts to $10,000.00 mental anguish damages and $4,951.00 damages for the difference in value of what he parted with for the house and the value of the house he received. As these points of error are overruled, Roberts is not entitled to actual damages; there is nothing to treble under the DTPA. Roberts may not recover attorney's fees in the absence of a judgment for actual damages under the DTPA. *Cravens v. Skinner*, 626 S.W.2d 173, 176 (Tex.App.—Fort Worth 1981, no writ); *Reiger v. DeWylf*, 566 S.W.2d 47, 48 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.).

■ In his sixth point of error, Roberts maintains that the trial court improperly excluded the unsigned deposition of Rita Sue Daniels, a non-party witness. We do not reach this issue as Roberts has failed to preserve the point. Counsel for Roberts did not prepare a bill of exceptions containing the proffered evidence as required by Texas Rules of Civil Procedure, Rule 372. *McInnes v. Yamaha Motor Corp., U.S.A.*, 673 S.W.2d 185, 187 (Tex.1984), *petition for cert. denied*, —— U.S. ——, 105 S.Ct.

782, 83 L.Ed.2d 777 (1985). The excluded testimony is not set out in a formal bill of exceptions nor does it otherwise appear in the statement of facts. The deposition itself did not accompany the record; even if it had, such is not sufficient to make a proper bill of exceptions. *Id.* at 187.

The disposition of this cause makes it unnecessary to reach U.S. Home's cross-points.

The judgment of the trial court is affirmed.

CADENA, C.J., concurs.

CADENA, Chief Justice, concurring.

I agree that the judgment should be affirmed because there is no evidence of any act by defendant which caused any damage to plaintiff's credit.