George H. LANG, III, Appellant,

v.

Priscilla Dykes LEE, Appellee.

No. 05–88–01045–CV.

Court of Appeals of Texas, Dallas.

Aug. 18, 1989.

Rehearing Denied Sept. 22, 1989.

G. Dennis Sullivan, Dallas, for appellant.

Will Ford Harnett, James J. Hartnett, Jr., Dallas, for appellee.

Before McCLUNG, ROWE and BURNETT, JJ.

McCLUNG, Justice.

George Lang (Lang) appeals an adverse judgment for damages in a suit brought by Priscilla Dykes Lee (Lee) for breach of agency and confidential relationship and conspiracy. Lang alleges that the jury's answers are against the great weight and preponderance of the evidence. In the alternative, Lang alleges that there is no evidence to support the jury's findings as to these questions. Lang further complains that the trial court, in entering judgment against Lang individually, and also against GELA Inc., a holding company of Independent Standard Insurance Company (ISI) to which Lee loaned $1,000,000, granted Lee a double recovery, and that the jury findings and stipulations in this case require an election of remedies by Lee. We affirm the judgment of the trial court.

The background to this suit began on June 26, 1982, when Lee's husband, Kerry Dykes, was killed in a motorcycle accident. Lang, Lee's uncle, had written three insurance policies, totalling $2,150,000, for Lee's husband. Claims were filed, and the proceeds were collected. Lee was only twenty-seven years old at that time. She had little or no business experience, two small children, and had suddenly come into a very large sum of money. Lang and his brother-in-law (Lee's step-father), Bill Hargis, offered to handle Lee's financial affairs. Trusting that they had her best interests at heart, and aware of Lang's many years of experience in insurance and financial planning, she accepted.

On July 26, 1982, the insurance checks arrived at Lang's office. Lang and his secretary took Lee to First City Bank in Dallas to deposit the checks into an account upon which Lee and Lang were both signatories. Such services were not generally rendered by Lang to his clients. Unknown to Lee, however, Lang also added Hargis to the account as a signatory. The following day, Lang's secretary wrote three checks distributing the majority of the proceeds as

follows: $572,000 to Priscilla Dykes Lee, $500,000 to Abilene National Bank, and $1,000,000 to GELA, Inc.

Out of the $572,000 proceeds dispersed to Lee, Bill Hargis purchased for her a Mercedes automobile, jewelry, and paid the expenses of her husband's funeral. Lee did not know what had become of the remainder. The $500,000 check to Abilene National Bank was deposited in the form of five CD's, insured for $100,000 each. Lee and Hargis each put their names on the CD's, each naming the other as beneficiary. Lee never received any bank statements regarding her CD's. Lang supervised Lee's spending carefully and warned her repeatedly about going broke. In addition to paying most of her bills, Lang paid Lee a monthly allowance, which had decreased from $5,000 to $1,000 by 1985. She rarely withdrew money without Lang's consent. When she did, Lang became angry and voiced his disapproval.

The last dispersement of the proceeds of these life insurance policies was a $1,000,-000 loan to GELA, Inc., a holding company for ISI. ISI was founded by Hargis and funded by Lang and Marilyn Hargis, Bill's wife and Lee's mother. At the time of the "loan," ISI was experiencing grave financial difficulty and had been placed into receivership. In fact, shortly before and at the time of Kerry Dykes's funeral, Lang and Hargis were searching in Texas and abroad attempting to find funds to keep ISI afloat. After failing in their search for capital these two men, without disclosing ISI's bleak financial outlook, suggested that Lee loan $1,000,000 to the insurance company. The $1,000,000 loaned to GELA, Inc. was evidenced by a promissory note and security agreement prepared by Al Ruebel, who served as attorney for both Lang and Lee. Lee received one interest payment on this loan at prime rate.

Throughout the entire time, Lee trusted Lang. She believed that he and Hargis would act in her best interests. She had very little knowledge of business matters, showed little interest in financial affairs and never objected to or asked questions concerning the use of her money. She signed checks and documents regularly without knowing or understanding their import or purpose. Lee also never received advice regarding investment alternatives; in fact, she did not have any independent advisors. Both her attorney, Al Ruebel, and her accountant, Bailey Vaught, were "family" appointed.

At trial, Lang and GELA, Inc. stipulated to a judgment against GELA, Inc. on the promissory note. The jury found that Hargis and Lang had a confidential relationship with Lee, based on agency, and that Lang had handled Lee's money unfairly, and had conspired with Hargis to use Lee's insurance proceeds for their own personal benefit. The jury found that Lee did not waive her rights to complain of Lang's action with regard to the insurance proceeds, or ratify the $1,000,000 loan to GELA, Inc. The jury also found that Lee was, through no fault of her own, unaware of the conspiracy and did not know of Lang's breach of the confidential relationship before she actually learned of her financial situation.

■ Lang first alleges that the jury's finding that Lee did not ratify the actions of Lang as her agent is against the great weight and preponderance of the evidence. From this entire record, we conclude that there was sufficient evidence presented at trial that this jury finding is not against the great weight and preponderance of evidence.

In reviewing factual sufficiency points, this Court will consider all of the evidence in the record that is relevant to the fact being challenged. We may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). This Court does not act as a fact finder nor does it judge the credibility of witnesses. This is true even if there is conflicting evidence upon which a different conclusion could be supported. *Clancy v. Zale*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

■ Before a trier of fact can find ratification, they must find that the agent

disclosed to the principal, fully and completely, all material facts known to the agent which might have affected the principal. Unless this duty on the part of the agent has been met, the principal cannot be held to have ratified the transaction. *Allison v. Harrison*, 137 Tex. 582, 156 S.W.2d 137, 140 (Tex.Comm'n App.1941, opinion adopted). The critical factors in determining if a ratification has taken place are: (1) the principal's subsequent knowledge of the transaction; and (2) his actions thereafter. *BancTexas Allen Pkwy v. Allied Am. Bank*, 694 S.W.2d 179, 182 (Tex.App.—Houston [14th Dist.] 1985, no writ).

The following evidence is relevant to our consideration: (1) Priscilla Dykes Lee was a young housewife and possessed little knowledge regarding business matters; (2) due to her husband's death, she received, through insurance proceeds and other sources, in excess of $2,000,000; (3) Lang was a close business associate of her deceased husband as well as her father-in-law and it was Lee's testimony that she trusted Lang; (4) Lang convinced Lee to loan $1,000,000 to Lang's insurance corporation, GELA, Inc., without disclosing that it was a business in dire need of capital; (5) Lang and Hargis did not tell her about their many failed attempts to find the needed capital, but on the contrary assured her that her money would be safe; (6) Lang did not provide Lee with advice on alternative methods of investing her money; (7) Lee accepted interest payments from the $1 million loan to GELA, Inc. and never asked how Lang used the $1,000,000 loan; (8) Lee received no advice on diversification of funds; (9) GELA, Inc. subsequently went bankrupt, with no assets with which to repay its creditors, including the $1,000,000 loan from Lee.

■ Unless there is evidence of full knowledge by the principal of the agent's unauthorized acts, or, alternatively, unless there is full evidence of facts from which knowledge can reasonably be imputed to the principal, the evidence as to ratification will be deemed to be insufficient. *Thermo Products v. Chilton Ind. School Dist.*, 647 S.W.2d 726, 733 (Tex.App.—Waco 1983,

writ ref'd n.r.e.). Where silence is the basis of ratification, it is required that knowledge of all material facts be possessed by the principal. *BancTexas Allen Pkwy*, 694 S.W.2d at 181 (citing *Diamond Paint Co. of Houston v. Embry*, 525 S.W.2d 529 (Tex. Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.)).

Lang, at minimum, must show that Lee possessed knowledge of *all* material facts when she made the loan to GELA, Inc. and that her silence thereafter was based on her *full* knowledge of Lang's actions. Lang's secretary claims that, in meetings, Lee "seemed to understand what was going on." Lee, however, testified that she never received any information regarding GELA, Inc., nor did she receive any information from Lang regarding more diversified methods of investing. In light of these factors and her lack of knowledge in business matters, the jury's finding that Lee did not ratify the loan was not so contrary to the overwhelming weight as to be clearly wrong and unjust. We overrule the first point of error.

■ The jury found that Lang engaged in a conspiracy with Hargis and that Lee suffered damages proximately caused by the actions of these two men. Lang contends that there is no evidence, or, in the alternative, insufficient evidence to support this finding.

We first address Lang's legal sufficiency claim. In reviewing the legal sufficiency of the evidence in support of the jury's finding of conspiracy, this Court must consider only the evidence and reasonable inferences drawn therefrom, which, when viewed in their most favorable light, support the trial court's finding. This Court must disregard all evidence and inferences to the contrary of the fact finding. If there is more than a scintilla of evidence to support the finding, the challenge fails. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987).

■ A civil action for a conspiracy will lie if the acts of the conspirators are not only malicious but without legal justification of the excuse and are performed with the intent of injuring another or if the

natural and necessary consequences of the acts is the oppression of the individual. *Great National Life Ins. Co. v. Chapa,* 377 S.W.2d 632, 635 (Tex.1964). The proof of the existence of a claim of conspiracy can be established through inferences:

> When men enter into conspiracies, they are not likely to call in a witness.... In such cases the injured party must necessarily have recourse to circumstantial evidence. For it is only by the inferences and deductions which men properly and naturally draw from the acts of others in such case, that their intentions can be ascertained. They are not likely to proclaim them in the hearing of witnesses.

*Mims v. Bohn,* 536 S.W.2d 568, 570 (Tex. Civ.App.—Dallas 1976, no writ).

At trial, a substantial amount of evidence was presented from which the jury could infer the existence of a conspiracy. Lang and Hargis were close personal friends, as well as brothers-in-law. They were long standing business associates. Lang served on the board of directors of Hargis's company, Aweco, and provided the company with insurance as their agent. When Hargis incorporated ISI in 1979, Lang and Marilyn Hargis each put up 50% of the capital used to finance it. When GELA, Inc. obtained the $1,000,000 loan from Lee, the money was transferred to ISI. Lee understood that the money would be loaned to the insurance company. She also testified that she believed that Lang and Hargis would "help" her with her money as they had indicated. It was Lee's testimony that the men "talked a lot together," but she does not remember signing several checks, giving them to Lang or Hargis, or learning at any time that Hargis was a signatory on her checking account.

The jury could infer that Lang knew that investing in the insurance company would be risky, since he and Hargis had failed in several attempts to acquire the money from other sources. From the active roles taken by Hargis and Lang in Lee's financial matters, the jury could also reasonably infer, that the men had engaged in a conspiracy to use Lee's insurance proceeds for their own personal gain.

In reviewing the legal sufficiency claim, we must then consider the circumstantial evidence in a light most favorable to support the jury's finding, disregarding all inferences contrary to that finding, that Lang and Hargis conspired to use Lee's insurance proceeds for personal gain. We conclude that there is more than a mere scintilla of evidence to support the jury's finding that Hargis and Lang used the proceeds to their advantage. Therefore, the legal sufficiency challenge fails.

In reviewing the factual sufficiency of the claim, we must determine whether the jury found a conspiracy against the great weight and preponderance of the evidence. Since conspiracy may be inferred, it is only if that inference by the jury is against the great weight of the evidence that this Court may set aside the verdict. Such is not the case here. In light of the evidence outlined above, and considering that this Court is not a fact finder and will not judge the credibility of the witnesses, we conclude there is sufficient evidence to justify this jury finding. We overrule the second point of error.

■ Lang further claims that the jury's finding that Lee did not fail to act as an ordinary prudent person exercising due diligence in discovering the conspiracy between Lang and Hargis is against the great weight and preponderance of the evidence. In his fourth point of error, he makes a similar factual sufficiency argument with respect to the jury's finding that Lee possessed no actual knowledge of the conspiracy. We address these points concurrently.

■ In an arm's length transaction, knowledge of facts that would have excited inquiry in the mind of a reasonably prudent person, which if pursued by him with reasonable diligence would lead to the discovery of the fraud, is equivalent to knowledge of the fraud as a matter of law. *Courseview, Inc. v. Phillips Petroleum Co.,* 158 Tex. 397, 312 S.W.2d 197, 205 (1958). In a confidential relationship, however, diligence on the part of the defrauded

party does not exact as prompt and as searching an inquiry into the conduct of the other party as where the parties were strangers or were dealing with strangers. *Field Measurement Serv. v. Ives*, 609 S.W.2d 615, 619 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd ñ.r.e.). Where there is a relationship of trust or confidence, as in this case, the defendant is under a duty to make a full disclosure of the facts so that the fraud may be discovered. The trust and confidence in the relationship are evidentiary matters bearing on the issue of whether the defrauded party acted as would a person of ordinary prudence in discovering the fraud. *Field Measurement*, 609 S.W.2d at 620. We conclude that the jury's findings are not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

The evidence before the jury was: (1) Lang was Lee's uncle and Hargis was her step-father; (2) Lee had little or no business experience, only a high school education, yet Lang was a very sophisticated businessman; (3) Lee suddenly came into possession of a large sum of money at a time when she was experiencing severe emotional distress over the recent death of her husband; (4) Lee's concentration was focused on the raising of her two children; (5) the supposed supervision of her affairs was by the family appointed attorney and accountants; (6) she lacked any financial advisor independent of her family. We hold there is sufficient evidence from which the jury could find that Lee possessed no actual knowledge of the fraud being perpetrated on her and that, due to the closeness of her relationship to the parties, she was not guilty of any lack of diligence in failing to discover the fraud earlier than she did. We overrule the third and fourth points of error.

▮ Lang charges that Lee waived her rights to complain about his actions and that the jury's finding was so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. We disagree.

▮ Waiver is the voluntary relinquishment of a known right, and its existence is largely dependent upon the intention of the party possessing the right. *Landrum v. Devenport*, 616 S.W.2d 359, 362 (Tex.Civ.App.—Texarkana 1981, no writ) (citing *Ford v. Culbertson*, 158 Tex. 124, 308 S.W.2d 855 (1958)). It is ordinarily a question of fact, dependent upon things done and said, *Lewis v. Smith*, 198 S.W.2d 598, 601 (Tex.Civ.App.—Fort Worth 1946, writ ref'd), and the burden of proof is on the party relying on waiver. *Ford v. Culbertson*, 158 Tex. 124, 138, 308 S.W.2d 855, 865 (1958) (cited in *Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.)). The question becomes one of law where the facts and circumstances are admitted or clearly established. *Smith ᐧ v. Northwest Nat'l Bank*, 403 S.W.2d 158, 160 (Tex.Civ.App.—Texarkana 1966, writ ref'd n.r.e.) (citing *Miller v. Deahl*, 239 S.W. 679 (Tex.Civ.App.—Amarillo 1922, writ ref'd)).

▮ Lang presents a factual sufficiency challenge to the jury finding that Lee did not waive her rights to complain of Lang's actions. Waiver can be expressed or implied. To establish an implied waiver of legal right, there must be a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part. *Smith*, at 160. To determine if the jury's finding on this issue is so against the great weight and preponderance of the evidence, the court will look at all evidence presented regarding waiver. The elements to be sought in the evidence are whether the party possessing the right is aware of the right and expressly relinquishes it, or whether the party acts in a manner inconsistent with, or fails to act in manner consistent with, an intent to claim the right. *Alford*, 619 S.W.2d at 213, 214.

Lee did sign the checks in question: $1 million to GELA, Inc.; $500,000 to Abilene National Bank for certificates of deposit, and $572,000 to her account, from which Hargis paid her bills and purchased several items for Lee. At the time the checks were signed, however, she was still grieving

over the loss of her husband and caring for her two small children. It was Lee's testimony that she did not know what Lang had done with her money. Lang, for his part, testified that she never said that she did not understand the loan to GELA, Inc. or that she did not want to be bothered with financial affairs. It is uncontroverted that Lee was completely unfamilar with business affairs and that she was told that she would be "set for life" due to her husband's large insurance policy. She never received any information regarding the GELA, Inc. loan or any reports on her money from Lang or anyone else. She trusted Lang and believed that he and Hargis wanted to help her. She received only one interest payment of $15,000 on the loan to GELA, Inc. and several items including a Mercedes automobile, using the money in the account set up for her by Hargis. Money from that account was also used to pay her personal bills.

The record is not clear that Lee was aware of Lang's actions and her rights pursuant to such actions or that Lee acted in a manner consistent with waiver. Waiver must be clearly proven, and the proof must amount to more than a scintilla of evidence, surmise, or suspicion. *Reynolds v. McCullough*, 739 S.W.2d 424, 429 (Tex. Civ.App.—San Antonio 1987, writ denied). We hold the jury's finding that Lee did not waive her rights is not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. We overrule Lang's fifth point of error.

Lang complains that he has been subjected to a double payment by the judgment of the trial court and that Lee elected, as her sole remedy, a judgment on the note against GELA, Inc. The parties stipulated that Lee was entitled to an agreed judgment for $1,000,000 on the note to GELA, Inc. The jury found that Lee had ratified the two other transfers, one of $572,000 and another of $500,000, but that she had not ratified the $1,000,000 transfer to GELA, Inc. The jury further found, with respect to the actions of Lang, that he had damaged her in the sum of $500,000 for his breach of their confidential relationship and in the sum of $500,000 for conspiracy. Lang alleges that, due to the jury's negative finding of ratification only with respect to the loan to GELA, Inc., Lee is recovering the same $1,000,000 two times. Lang, however, waived this defense by failing to raise it in the trial court. The defense of election of remedies, if relied upon to defeat recovery, must be specially pleaded. The defense of election must be presented in the trial court and cannot be urged for the first time on appeal. *Redding v. Ferguson*, 501 S.W.2d 717, 720 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e.); *Bradley v. Straus–Frank Co.*, 414 S.W.2d 504, 510 (Tex.Civ.App.—Dallas 1967, no writ). Lang did not present this defensive plea to the trial court; therefore, it cannot now be urged before this Court. We overrule points of error six and seven.

Lee presents a cross-point which does not request any additional relief beyond that which was granted by the trial court. Because we affirm the judgment of the trial court, we do not reach this cross-point.

We affirm the judgment of the trial court.