Hugh F. VANASEK, Appellant,

v.

Paul B. UNDERKOFLER, Jr. and
Goins, Underkofler, Crawford
& Langdon, Appellees.

No. 05–95–01475–CV.

Court of Appeals of Texas,
Dallas.

May 20, 1999.

Robert D. Lybrand, Coppell, for Appellant.

Charles Rodney Acker, Dallas, Robert J. Garrey, Richardson, for Appellee.

Before: Justices OVARD, MALONEY, and MOSELEY.

## OPINION

MOSELEY, Justice.

Appellant Hugh F. Vanasek sued appellees Paul B. Underkofler, Jr. and the law firm of Goins, Underkofler, Crawford & Langdon (collectively "Underkofler") for negligence, gross negligence, breach of contract, breach of warranty, and violations of the Texas Deceptive Trade Practices—Consumer Protection Act (DTPA). All of these causes of action arose out of Underkofler's alleged actions or omissions while representing Vanasek in a previous lawsuit. The trial court granted Underkofler's motion for summary judgment and rendered a take-nothing judgment against Vanasek. In eleven points of error, Vanasek contends the trial court erred in granting Underkofler's motion for summary judgment. We affirm the summary judgment for Underkofler on Vanasek's cause of action under the DTPA for breach of implied warranty. In all other respects, we reverse the trial court's judgment and remand the cause to the trial court for further proceedings.

## BACKGROUND

### A. Underlying Lawsuit

Vanasek owned an interest in a real estate development project. He sold his interest in the project to Albritton Development Company I, Ltd. (ADC), a limited partnership, which executed a note in favor of Vanasek. In 1987, the parties executed a new note in the amount of $666,400. ADC defaulted on the second note in 1990. In July 1990, Vanasek retained attorney Paul Underkofler to recover the balance owed on the note. Vanasek sued ADC and four of its eight partners, Robert Albritton, Ford Albritton, Jr., Ford Albritton, III, and James Wilson, III. These four partners had guaranteed the note. The defendants counterclaimed, alleging that Vanasek had fraudulently induced them to make the note and guaranty by misrepresenting that he had a major tenant for the property being developed.

A nonjury trial began on June 6, 1991. Vanasek testified and rested his case. Robert Albritton testified for the defense. During his testimony, however, the trial judge asked to see the parties' attorneys in chambers. The trial was then recessed and continued to allow the parties to attempt to resolve the case through mediation. The mediation was ultimately unsuccessful.

During the June 6, 1991 proceedings, Vanasek began to lose confidence in Underkofler. Over the next several months, Vanasek became increasingly unhappy with Underkofler's representation. As a result, Underkofler filed a motion to withdraw as Vanasek's counsel, which was granted on May 22, 1992. Meanwhile in the fall of 1991, two ADC partners, Robert Albritton and Ford Albritton, Jr., filed for bankruptcy.

Vanasek hired new counsel and proceeded in his suit against ADC and the four

partners guaranteeing the note. Vanasek's new lawyer also filed a separate lawsuit on the note against the remaining four partners in ADC who had not guaranteed the note and who were not defendants in the original suit.

On April 29, 1994, after an almost three-year recess, the trial of the promissory note lawsuit resumed. ADC, Robert Albritton, and Ford Albritton, Jr. did not appear. After one witness testified on Vanasek's behalf, the trial was recessed again to give Robert Albritton the opportunity to appear and complete his testimony.

In September 1994, Vanasek and the six ADC partners who had not taken bankruptcy entered into a settlement agreement concerning the promissory note cases. Through the settlement Vanasek dismissed his claims against six of the ADC partners, but did not release or discharge any cause of action he had against ADC or the two partners who had filed for bankruptcy protection, Robert Albritton and Ford Albritton, Jr.

After the second recess, trial of the promissory note lawsuit again resumed on September 23, 1994. Vanasek appeared through counsel and was the only party to appear. On that date, the trial court entered judgment on the grounds of the settlement agreement and also entered judgment for Vanasek against the remaining defendants, ADC, Robert Albritton, and Ford Albritton, Jr.

## B. Malpractice Suit

On April 6, 1994, almost two years after Underkofler withdrew as Vanasek's counsel in the promissory note case, and just weeks before the trial of that case resumed after the first recess, Vanasek filed suit against Underkofler. In this, the "malpractice suit," Vanasek alleged causes of action against Underkofler for negligence, gross negligence, breach of contract, breach of implied and express warranties, and DTPA violations. All of these causes of action arose out of Underkofler's alleged actions or omissions while representing Vanasek in the promissory note lawsuit.

Vanasek's discovery responses (and later his summary judgment response) listed numerous acts and omissions by Underkofler allegedly constituting malpractice. These acts and omissions fall into two categories. First, Vanasek complained that Underkofler mishandled the suit on the note. For example, Vanasek alleged that Underkofler: (1) failed to list himself as an expert witness on attorney's fees; (2) failed to proceed with discovery to obtain relevant documents; (3) failed during Vanasek's case-in-chief to offer evidence that Vanasek was the holder and owner of the note or evidence of the amount due thereunder; (4) failed to prepare for trial and to understand the facts surrounding the case; and (5) failed to join all ADC partners in the suit. Vanasek also asserted that Underkofler's law firm should have recognized Underkofler's malpractice and had another attorney from the firm continue to represent Vanasek.

Second, Vanasek alleged that Underkofler agreed to recess the trial and submit the case to mediation without Vanasek's knowledge or permission. Vanasek contended this delayed the underlying suit and cost him the opportunity to recover from Robert Albritton and Ford Albritton, Jr., the two ADC partners who filed Chapter 7 bankruptcy proceedings. Underkofler moved for summary judgment in the malpractice suit, asserting he was entitled to judgment as a matter of law on ten separate grounds. The trial court granted the motion without specifying the ground or grounds relied upon for its ruling and rendered a take-nothing judgment for Underkofler. This appeal followed.

## STANDARD OF REVIEW

The purpose of the summary judgment rule is not to provide either a trial by deposition or a trial by affidavit; rather, it provides a method of summarily terminating a case when it clearly appears that only a question of law is involved and that no genuine issue of fact remains.[1]

Because the trial court granted summary judgment in this case on July 25, 1995, the "no evidence" summary judgment provisions of Texas Rule of Civil Procedure 166a(i) do not apply to this judgment.[2] Thus to obtain a summary judgment, the movant has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.[3] In deciding whether there is a disputed material fact issue precluding summary judgment, we take evidence favorable to the nonmovant as true.[4] We indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor.[5]

Summary judgment for a defendant is proper when the summary judgment evidence negates an essential element of the plaintiff's cause of action as a matter of law or conclusively establishes all elements of an affirmative defense.[6] Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the nonmovant to produce controverting evidence raising a fact issue as to the elements negated.[7]

We uphold a summary judgment on any ground that is supported by the evidence and pleadings.[8] Because the order granting summary judgment does not specify the particular grounds on which the trial court relied, to prevail on appeal Vanasek must defeat each ground for summary judgment presented by Underkofler's motion.[9]

## BREACH OF IMPLIED WARRANTY

Underkofler's motion for summary judgment alleged that he was entitled to summary judgment because there is no cause of action under the DTPA for breach of implied warranty of professional services. In his tenth point of error, Vanasek contends that the trial court erred in granting summary judgment on his DTPA cause of action for breach of implied warranty.

■■■ The DTPA prohibits the breach of an express or implied warranty, but it does not create warranties.[10] Actionable warranties under the DTPA must be recognized by the common law or created by statute.[11] An implied warranty for services is a purely common-law creation.[12] The Texas Supreme Court has held that

1. See Gaines v. Hamman, 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962).

2. See TEX.R.CIV.P. 166a(i) (effective September 1, 1997).

3. See TEX.R.CIV.P. 166a(c).

4. See Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548–49 (Tex.1985).

5. See id.

6. See Black v. Victoria Lloyds Ins. Co., 797 S.W.2d 20, 27 (Tex.1990).

7. See Torres v. Western Cas. & Sur. Co., 457 S.W.2d 50, 52 (Tex.1970); Owen Elec. Supply,

Inc. v. Brite Day Constr., Inc., 821 S.W.2d 283, 286 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

8. See Carr v. Brasher, 776 S.W.2d 567, 569 (Tex.1989).

9. See id.

10. Parkway Co. v. Woodruff, 901 S.W.2d 434, 438 (Tex.1995).

11. Id.

12. Id.

Texas law does not recognize a cause of action for breach of an implied warranty of professional services.[13] Thus we overrule Vanasek's tenth point of error.

### SPECULATIVE DAMAGES

Underkofler's motion for summary judgment alleged that he was entitled to summary judgment because Vanasek's damages were too speculative for recovery as a matter of law. In his seventh point of error, Vanasek contends the trial court erred in granting summary judgment for Underkofler because the damages he suffered are not too speculative as a matter of law for recovery.

 Damages are an element of each of Vanasek's causes of action. To prevail on any of his causes of action against Underkofler, Vanasek must prove that he was damaged.[14] While uncertainty as to the *amount* of damages is not fatal to recovery, lack of evidence or uncertainty as to the *fact* of damages is.[15] Damages must be ascertainable in some manner other than by mere speculation or conjecture, and by reference to some fairly definite standard, established experience, or direct inference from known facts.[16] Remote damages, or those damages that are purely conjectural, speculative, or contingent, are too uncertain to be ascertained and cannot be recovered.[17]

 Additionally, a person alleging legal malpractice arising out of an attorney's representation of him as plaintiff in an underlying case must prove the amount of damages he would have recovered and collected in the underlying case if it had been properly prosecuted.[18] The principle behind this rule is akin to the requirement that a breach of duty must be the cause in fact of damages to justify recovery. Even if an attorney's negligence prevented the entry of a judgment in his client's favor, the client suffered no damage unless he could have collected some part of that judgment, used it to offset other debts owed to the judgment debtor, or otherwise benefitted from the judgment's assignment. This principle applies as well to other causes of action, however named, against an attorney arising out of the attorney's allegedly negligent representation in prior litigation.[19]

 To properly obtain summary judgment on this ground, Underkofler had to negate conclusively the existence of Vanasek's alleged damages.[20] In support of his

---

13. *Murphy v. Campbell*, 964 S.W.2d 265, 268–69 (Tex.1997).

14. *See Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex.1995).

15. *Pace Corp. v. Jackson*, 155 Tex. 179, 190, 284 S.W.2d 340, 348 (1955).

16. *See A.B.F. Freight Sys., Inc. v. Austrian Import Serv., Inc.*, 798 S.W.2d 606, 615 (Tex. App.—Dallas 1990, writ denied).

17. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 205 (Tex.App.— Austin 1992, no writ); *Roberts v. U.S. Home Corp.*, 694 S.W.2d 129, 135 (Tex.App.—San Antonio 1985, no writ); *see City of Dallas v. Forest Hills*, 931 S.W.2d 601, 605 (Tex.App.— Dallas 1996, no writ).

18. *See Burnap v. Linnartz*, 914 S.W.2d 142, 152 (Tex.App.—San Antonio 1995, writ denied); *Mackie v. McKenzie*, 900 S.W.2d 445, 448–49 (Tex.App.—Texarkana 1995, writ denied); *see also Cosgrove v.. Grimes*, 774 S.W.2d 662, 665 (Tex.1989) (op. on reh'g).

19. *See Mackie*, 900 S.W.2d at 448 (allegations of negligence and false, misleading, and deceptive practices); *Cosgrove*, 774 S.W.2d at 664–66 (allegations of negligence and DTPA claims based on breach of implied warranty).

20. *See* TEX.R.CIV.P. 166a(c). Again, Texas Rule of Civil Procedure 166a(i) does not apply to this judgment.

motion, Underkofler relied on, among other things, portions of Vanasek's deposition and the settlement agreement between Vanasek and the six settling ADC partners, both of which were contained in the summary judgment evidence before the court. The settlement agreement reveals that Vanasek settled his claims against the six ADC partners who did not take bankruptcy, including the claims he asserted against four of the partners in the underlying suit. In return, Vanasek received:

(1) $12,500 cash settlement from the six partners;

(2) the release from and dismissal of a $15,000,000 counterclaim asserted by two of the defendants in the promissory note case;

(3) the release of any liability Vanasek might have had on any other counterclaims, asserted and unasserted, of the six settling partners; and

(4) the assignment from the settling parties of a $10,000,000 claim against Robert Albritton's bankruptcy estate.

The record also indicates that after the settlement, Vanasek pursued the underlying suit and obtained a judgment against ADC and the bankruptcy estates of Robert Albritton and Ford Albritton, Jr., jointly and severally, for $858,259.92; according to the record, Vanasek had collected approximately $12,000 of this judgment.

In his deposition, Vanasek described why he accepted the settlement with six of the ADC partners:

Had I continued with that case, I took a very, very good chance for getting hit for a $15 million judgment and being forced into bankruptcy. That's the only reason I accepted that ludicrous $12,500....

Vanasek further agreed that the $15,000,000 counterclaim had been pending against him when he went to trial in June of 1991, and that the risks that a judgment might be rendered against him on the counterclaim were the same in 1991 as when he settled. He also testified that the promissory note lawsuit was reset for trial numerous times after Underkofler withdrew from the case, and that he asked for or agreed to a number of these resettings.

Thus the record before the trial court indicated that, for a factfinder to determine whether Vanasek suffered damages in fact as a result of the alleged malpractice (*i.e.*, whether the amount Vanasek would have collected in the promissory note case, absent any malpractice, exceeded the amount he actually collected), a finder of fact would have to determine the outcome of a number of contingencies, including:

(1) the outcome, absent any malpractice, of the $15,000,000 counterclaim asserted against Vanasek in the promissory note case and of the counterclaims of the other ADC partners that were not asserted in the promissory note case;

(2) whether the trial delay resulting from the alleged malpractice affected the existence or timing of bankruptcy filings of Robert Albritton and Ford Albritton, Jr. (the two ADC partners who filed for bankruptcy protection), and the nonfiling of bankruptcy cases by ADC and any or all of its other partners, and the effects of any such changes on the collectibility of any earlier judgment; and

(3) the ultimate amount and timing of any payments Vanasek may receive on the $10,000,000 claim against Robert Albritton's bankruptcy estate (which Vanasek received in the settlement with the other ADC partners), and on Vanasek's $858,259.92 judgment against ADC and the bankruptcy estates of Robert Albritton and Ford Albritton, Jr., jointly and severally, in the promissory note case.

But while Underkofler may have presented evidence that Vanasek's damages are speculative, we cannot conclude that the record conclusively negated the existence of Vanasek's damages. Given the facts of this case it may be difficult for Vanasek to prove that he was damaged in fact as the result of Underkofler's alleged malpractice. However, we decline to rule that there is no evidence that Vanasek could present at trial that would permit a finder of fact to resolve any contingencies concerning the existence of any damages in Vanasek's favor. We sustain Vanasek's seventh point of error.

## ONE SATISFACTION RULE

Underkofler's motion for summary judgment alleged that he was entitled to summary judgment because allowing Vanasek to recover against him after settlement of the underlying case would violate the common law doctrine referred to as the one satisfaction rule. In his ninth point of error, Vanasek contends that the trial court erred in granting summary judgment because his recovery against Underkofler does not violate the one satisfaction rule.

■ The one satisfaction rule prevents a plaintiff from recovering more than the amount required for full satisfaction of a single injury.[21] Appellate courts have applied the one satisfaction rule when defendants commit the same acts as well as when defendants commit technically differing acts resulting in a single injury.[22] When applicable, the rule reduces a non-settling party's liability for damages by allowing a credit against any adverse judgment for the amount of any settlement

entered into by a cotortfeasor.[23] Underkofler contends Vanasek had one injury—his claim on the note—and that as a matter of law he obtained one satisfaction for his injury when he settled the underlying case.

■ We conclude Underkofler has not shown that the one satisfaction rule entitles him to summary judgment in this case. Even if Vanasek suffered a single injury, and even if Underkofler is entitled to a credit against any of his tort liability by the amount of the settlement of Vanasek's underlying contract claims, we have already held that Underkofler has not conclusively established that Vanasek received full satisfaction for his injury by settling the underlying case. Absent such a determination, the application of the one satisfaction rule would not bar Vanasek's recovery, but merely result in Underkofler receiving a credit against his liability in the amount of Vanasek's settlement. We sustain Vanasek's ninth point of error.

## CAUSATION

Underkofler's motion for summary judgment alleged that he was entitled to summary judgment because, as a result of Vanasek's settlement of the underlying case, Underkofler's actions could not be a proximate or producing cause of Vanasek's damages as a matter of law. Underkofler also alleged that he was entitled to summary judgment because Vanasek's settlement of the underlying case is an intervening or superseding cause of his damages. Thus, Underkofler contended that he had conclusively negated the causation elements of Vanasek's causes of action. In his first point of error, Vanasek contends that the trial court erred in granting sum-

21. *El Paso Natural Gas Co. v. Berryman,* 858 S.W.2d 362, 364 (Tex.1993).

22. *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 7 (Tex.1991); *Byrd v. Woodruff,* 891 S.W.2d 689, 702 (Tex.App.—Dallas 1994, writ dism'd by agr.).

23. *See Stewart Title,* 822 S.W.2d at 7; *Byrd,* 891 S.W.2d at 702.

mary judgment because genuine issues of material fact exist as to causation. In his second point of error, Vanasek contends that the trial court erred in granting summary judgment on grounds that the settlement was a superseding or intervening cause of damages.

■ A legal malpractice cause of action is a cause of action for negligence.[24] Dividing a legal malpractice cause of action into separate actions for negligence, breach of contract, and other causes of action will not change the fact that the causes of action sound in negligence.[25] A plaintiff seeking to recover for attorney malpractice must prove that the attorney's breach of a duty owed to his or her client proximately caused the client's injuries.[26] Likewise, causation is an element of a DTPA claim;[27] the plaintiff must prove that the DTPA violation was a "producing cause" of the plaintiff's injuries.[28] In most cases the issue of causation is a question of fact.[29]

■ Underkofler characterizes Vanasek's settlement of the underlying suit as "voluntary" and contends that Vanasek's settlement, as a matter of law, severed any causative link between Underkofler's alleged actions and any damages allegedly suffered by Vanasek. Vanasek presented evidence, however, that Underkofler's al-

leged malpractice effectively forced Vanasek to mitigate his damages by settling the underlying suit.[30] Vanasek testified in his deposition that because of Underkofler's handling of the suit, he was forced to settle his claims on the terms he did. Vanasek said that his "chances for a just trial and settlement were gone." Under these circumstances, we cannot conclude as a matter of law that Underkofler's alleged malpractice was not a producing or proximate cause of Vanasek's alleged damages, or that the settlement was a superseding and intervening cause of Vanasek's damages.

■ Further, even if the settlement was voluntary and a superseding and intervening cause of some of Vanasek's damages, Vanasek did not settle with all defendants in the underlying suit. Three of the defendants in the underlying suit were not parties to the settlement agreement. Vanasek proceeded to trial and obtained a judgment against them. Therefore, the settlement agreement does not as a matter of law break the chain of causation between Underkofler's alleged malpractice and any damages to Vanasek's ability to recover from the nonsettling defendants in the underlying suit.

Underkofler also argues that because Vanasek was represented by new counsel at the time of the settlement agreement and the conclusion of the trial, Underko-

24. *See Cosgrove,* 774 S.W.2d at 664.

25. *See Rodriguez v. Klein,* 960 S.W.2d 179, 184 (Tex.App.—Corpus Christi 1997, no writ); *Burnap,* 914 S.W.2d at 148.

26. *Peeler,* 909 S.W.2d at 496.

27. Although it is not clear whether Vanasek has asserted any other DTPA claims that are distinct from his legal malpractice claims, we nevertheless include causation under the DTPA in our discussion.

28. Tex.Bus. & Com.Code Ann. § 17.50(a) (Vernon Supp.1999); *see Latham v. Castillo,* 972 S.W.2d 66, 69 (Tex.1998); *Doe v. Boys Clubs*

*of Greater Dallas, Inc.,* 907 S.W.2d 472, 478 (Tex.1995).

29. *See Millhouse v. Wiesenthal,* 775 S.W.2d 626, 627 (Tex.1989).

30. *See Cohen v. Lipsig,* 92 A.D.2d 536, 459 N.Y.S.2d 98, 99 (N.Y.App.Div.1983) (cause of action for legal malpractice is still viable·despite plaintiff's settlement of the underlying lawsuit where such settlement was compelled because of plaintiff's former counsel's mistakes).

fler's acts or omissions could not have proximately caused Vanasek's damages. Underkofler asserts in his brief that, during the lengthy period of time between Underkofler's withdrawal and the continuation of the trial and settlement with some of the defendants, Vanasek's new counsel could have corrected any of Underkofler's alleged mistakes. The summary judgment record, however, does not conclusively establish that Vanasek's new attorney could have corrected any mistakes. The summary judgment evidence does not conclusively show that, during the protracted recess during trial, Vanasek's new counsel could have amended his discovery responses, designated additional witnesses, or conducted additional discovery. Further, Vanasek stated in his deposition that his new lawyer told him no further discovery was possible.

Neither does Underkofler's argument address Vanasek's allegations that Underkofler's agreement to recess the trial and submit to mediation *itself* damaged Vanasek by delaying the resolution of the underlying lawsuit and reducing his ability to recover damages from Robert Albritton and Ford Albritton, Jr., the two ADC partners who filed Chapter 7 bankruptcy proceedings.

We conclude that the trial court erred in granting summary judgment for Underkofler on grounds that he had conclusively negated the element of causation in Vanasek's claims. We sustain Vanasek's first and second points of error.

## Public Policy

Underkofler's motion for summary judgment alleged that he was entitled to summary judgment because allowing Vanasek to pursue a malpractice suit against him after Vanasek entered into a settlement agreement violates the strong public policy which favors and encourages voluntary settlement of disputes. In his sixth point of error, Vanasek contends that the trial court erred in granting summary judgment on his legal malpractice cause of action because his pursuit of the malpractice cause of action does not violate public policy.

Underkofler relies on the Pennsylvania cause of *Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick*.[31] In *Muhammad*, the plaintiff in the underlying suit apparently settled with the defendants and then decided the settlement was unsatisfactory. The plaintiff then sued the attorneys who obtained the settlement. Because of the strong public policy of encouraging settlements, the Pennsylvania Supreme Court did not allow the malpractice suit.[32]

■ However, the facts of this case are quite different from the facts in *Muhammad*. Vanasek did not enter into a settlement arranged by Underkofler and then later decide he wanted a bigger settlement. Instead, Vanasek claims he was effectively forced into the settlement because Underkofler's alleged malpractice damaged his ability to recover his damages in the underlying case.[33] Further, Vanasek did not settle with all the defendants in the underlying suit; he proceeded to judgment against three of them. We conclude the public policy concerns at issue in *Muhammad* do not, as a matter of law, entitle Underkofler to summary judgment. Thus, we sustain Vanasek's sixth point of error.

---

**31.** *Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick*, 526 Pa. 541, 587 A.2d 1346, 1348–49 (1991).

**32.** *Id.* at 1349.

**33.** *See Cohen*, 459 N.Y.S.2d at 99.

## LIMITATIONS

■ Underkofler's motion for summary judgment alleged that he was entitled to summary judgment because Vanasek's claims were barred by the statute of limitations. In his fourth point of error, Vanasek contends that the trial court erred in granting summary judgment on grounds that Vanasek's causes of action are barred by the statute of limitations. We agree.

■ Each of Vanasek's causes of action against Underkofler is governed by a two-year statute of limitations.[34] Generally, a legal malpractice cause of action accrues when the client sustains a legal injury or, in cases governed by the discovery rule, when the client discovers or should have discovered the facts establishing the elements of a cause of action.[35] Underkofler contends that, as a matter of law, Vanasek knew or should have known of the matters of which he complains more than two years before filing this lawsuit.

In *Hughes v. Mahaney & Higgins*, however, the Texas Supreme Court held that when an attorney commits malpractice while providing legal services in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claims against the attorney is tolled until all appeals on the underlying claims are exhausted.[36] Vanasek relies on *Hughes* to argue that the statute of limitations did not begin to run until September 23, 1994, the day the judgment in the underlying case was signed. (No appeal was taken from that judgment.) Vanasek filed this malpractice suit on April 6, 1994, almost six months before judgment in the underlying suit. Underkofler, on the other hand, maintains that *Hughes* does not apply to the facts of this case.

■ One of the policy reasons behind the ruling in *Hughes* was that a plaintiff should not be forced to adopt contradictory positions in the underlying litigation and the malpractice action, thereby jeopardizing success in both.[37] Underkofler asserts that Vanasek's allegations of malpractice are not inconsistent with any position he was taking in the underlying case and that therefore the *Hughes* rule does not apply. Underkofler ignores the second policy reason behind the holding in *Hughes* —tolling the statute of limitations promotes judicial economy and efficiency because the viability of the malpractice action depends on the outcome of the underlying action.[38] If the claimant prevails on the underlying claims, his lawyer's malpractice, if any, caused no damages.[39] Further, we note that an attorney's withdrawal before a final judgment does not prevent application of *Hughes*.[40]

We conclude the ruling in *Hughes* covers the facts of this case. Vanasek sued Underkofler claiming that Underkofler committed legal malpractice while provid-

---

34. *See Dear v. Scottsdale Ins. Co.*, 947 S.W.2d 908, 917 (Tex.App.—Dallas 1997, writ denied) (two-year statute of limitations governs all legal malpractice claims, regardless of whether plaintiff couches them in terms of tort, contract, or another theory).

35. *Id.*

36. *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 156 (Tex.1991); *see Sanchez v. Hastings*, 898 S.W.2d 287, 288 (Tex.1995) (applying *Hughes* ).

37. *See Hughes*, 821 S.W.2d at 156–57.

38. *See id.* at 157; *Dear*, 947 S.W.2d at 918.

39. *Dear*, 947 S.W.2d at 918.

40. *See Washington v. Georges*, 837 S.W.2d 146, 148 (Tex.App.—San Antonio 1992, writ denied).

ing legal services in the context of litigation. Under *Hughes,* the statute of limitations for these malpractice claims was tolled until there was a final judgment or other resolution in the underlying litigation.[41] Accordingly, Vanasek's legal malpractice claims were not barred by the statute of limitations.

Vanasek's fourth point of error contends the trial court erred in granting summary judgment on limitations grounds as to all his causes of action, including his DTPA claims. We have already upheld the summary judgment as to Vanasek's DTPA cause of action arising from breach of implied warranty. However, Vanasek's DTPA allegations were not limited to that claim. He broadly alleged that Underkofler's "actions and omissions constitute a deceptive trade practice as that term is defined in the Texas Deceptive Trade Practices Act." As to Vanasek's DTPA claims other than for breach of implied warranty, Underkofler moved for summary judgment only on limitations grounds.

■ We conclude that the policy reasons behind *Hughes* also apply to a DTPA claim arising from an attorney's acts or omissions related to underlying litigation. Just as a party should not be forced to adopt contradictory positions in a legal malpractice action against his counsel and in the underlying matter in which the malpractice allegedly occurred, neither should he be forced to adopt contradictory positions in a DTPA suit against his counsel and in the underlying matter. Tolling limitations on such a DTPA claim likewise promotes judicial economy and efficiency, as the viability of the DTPA action depends on the outcome of the underlying action. Thus, we hold the statute of limitations on Vanasek's DTPA claims was tolled until there was a final judgment or other resolution in the underlying litigation. We sustain Vanasek's fourth point of error as to his legal malpractice cause of action and his DTPA claims other than those based on breach of implied warranty.

## AFFIRMATIVE DEFENSES

■ Underkofler's motion for summary judgment alleged that he was entitled to summary judgment on each of the following affirmative defenses to Vanasek's causes of action: waiver,[42] estoppel,[43] ratification,[44] compromise and settlement,[45] election of remedies,[46] and Vana-

---

**41.** See *Hughes,* 821 S.W.2d at 156; *Washington,* 837 S.W.2d at 148.

**42.** Waiver is the voluntary relinquishment of a known right. *Lang v. Lee,* 777 S.W.2d 158, 164 (Tex.App.—Dallas 1989, no writ).

**43.** Underkofler relies on the following explanation of estoppel: "One who by his language or conduct induces another to do or omit that which he would not otherwise have done or omitted to do, is estopped from asserting any claim or maintaining any action against him who is so misled." See *Wickwire–Mitchell Royalty Trust v. Taylor,* 200 S.W.2d 441, 443 (Tex.Civ.App.—Texarkana 1947, no writ). Quasi-estoppel, however, is the term applied to certain legal bars such as ratification, election, or waiver. *Twelve Oaks Tower I, Ltd. v. Premier Allergy, Inc.,* 938 S.W.2d 102, 111

(Tex.App.—Houston [14th Dist.] 1996, no writ).

**44.** The elements of ratification are: (1) approval by act, word, or conduct; (2) with full knowledge of the facts of the earlier act; and (3) with the intention of giving validity to the earlier act. *Motel Enters., Inc. v. Nobani,* 784 S.W.2d 545, 547 (Tex.App.—Houston [1st Dist.] 1990, writ denied) (op. on reh'g).

**45.** A compromise and settlement is the conclusion of a claim through a contract in which the parties agree to mutual concessions to avoid resolving their controversy through litigation. *Kerrville HRH, Inc. v. City of Kerrville,* 803 S.W.2d 377, 388 (Tex.App.—San Antonio 1990, writ denied).

**46.** The election of remedies doctrine may constitute a bar to relief when (1) one successful-

sek's failure to mitigate damages. Thus, Underkofler contended that he conclusively established all elements of these affirmative defenses.[47] In his third point of error, Vanasek contends that the trial court erred in granting summary judgment on grounds that Vanasek waived his claims against Underkofler by settling the underlying lawsuit. In his fifth point of error, Vanasek contends that the trial court erred in granting summary judgment on grounds of waiver, estoppel, ratification, compromise and settlement, election of remedies, and failure to mitigate damages.

■ Underkofler relies on the same facts to establish each of the above-mentioned affirmative defenses. He contends the affirmative defenses bar Vanasek's claims because Vanasek was aware of all the facts he claims constitute negligence by June 6, 1991 (the first day of trial in the underlying suit), but made a knowing choice to settle the case instead of try it to completion. Again, Underkofler's premise is faulty, however, because Vanasek maintains that Underkofler's acts and omissions forced him into the subsequent settlement in mitigation of his damages caused by Underkofler's malpractice. Further, Vanasek did not settle all of the underlying suit; he tried the case to completion against three defendants. Therefore, Underkofler did not establish as a matter of law that Vanasek's settlement of part of the underlying suit constituted waiver, estoppel, ratification, compromise and settlement, election of remedies, or the failure to mitigate damages. To the extent it granted summary judgment for Underkofler on grounds of these affirmative de-

fenses, the trial court erred. We sustain Vanasek's third and fifth points of error.

### CONCLUSION

Because of our disposition of the preceding points of error, we need not consider Vanasek's eighth and eleventh points of error. We affirm the summary judgment for Underkofler on Vanasek's cause of action under the DTPA for breach of implied warranty. In all other respects, we reverse the trial court's judgment and remand this cause to the trial court for further proceedings.

MALONEY, J., dissenting.

MALONEY, Justice, dissenting.

Although I agree with the majority's conclusion that limitations does not bar Hugh F. Vanasek's legal malpractice cause of action, I cannot agree that his Deceptive Trade Practices Act (DTPA) claims, like his malpractice claim, were tolled until final judgment in or other resolution of the underlying proceeding. Consequently, I dissent to that portion of the majority's opinion and would overrule appellant's fourth point of error as it relates to his DTPA claims.

The Texas Legislature has specified when a plaintiff must commence his DTPA action. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 17.565 (Vernon 1987). Under section 17.565, a DTPA action "must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or prac-

---

ly exercises an informed choice (2) between two or more remedies, rights, or states of facts (3) which are so inconsistent as to (4) constitute manifest injustice. *Medina v. Herrera,* 927 S.W.2d 597, 600 (Tex.1996).

**47.** *See Black,* 797 S.W.2d at 27.

tice." *Id.* The legislature included the discovery rule within section 17.565. *See id.; Willis v. Maverick,* 760 S.W.2d 642, 647 (Tex.1988); *Hall v. Stephenson,* 919 S.W.2d 454, 468 (Tex.App.—Fort Worth 1996, writ denied).

If an attorney commits malpractice while providing legal services in the prosecution or defense of a claim that results in litigation, the statute of limitations on a malpractice claim against the attorney is tolled until all appeals on the underlying claims are exhausted. *See Hughes v. Mahaney & Higgins,* 821 S.W.2d 154, 156 (Tex.1991). Neither the legislature nor the supreme court, however, has applied the rationale of *Hughes* to toll the statute of limitations for DTPA claims arising from an attorney's acts or omissions relating to litigation. In light of the specific statutory authority governing limitations in DTPA claims and the lack of existing authority to support an exception to section 17.565's application, I decline to follow the majority's application of *Hughes* to DTPA claims.

To prevail on statute of limitations grounds, appellees Paul B. Underkofler and Goins, Underkofler, Crawford & Langdon had to show (1) the date that the cause of action accrued and (2) that Vanasek filed his suit after the passage of the applicable limitations period. *See Zale Corp. v. Rosenbaum,* 520 S.W.2d 889, 890–91 (Tex.1975). Movants' summary judgment evidence shows that, in June 1991, Vanasek expressed that Underkofler mishandled various aspects of the proceedings in the underlying litigation. In November 1991, Vanasek met with Underkofler and expressed his dissatisfaction with the representation he was receiving and the fees he had paid. Vanasek continued to complain about Underkofler's representation throughout early 1992. On April 7, 1992, Vanasek wrote to Jack Langdon, a Goins, Underkofler, Crawford & Langdon part-

ner, listing specific complaints previously expressed to Underkofler regarding his representation. Vanasek had already determined that he could no longer work with Underkofler because he had lost confidence in Underkofler following a June 1991 hearing and realized he "was in dire straits."

Vanasek's summary judgment response does not contest that, as early as June 1991, appellant was aware of the allegedly deceptive, misleading, and false acts or practices forming the grounds for his DTPA claims. Instead, he asserts that the summary judgment evidence either fails to contain evidence, or reveals issues of material fact on whether, appellant either discovered or should have discovered the acts giving rise to the claims. Vanasek, however, had to plead discovery to invoke the discovery rule. *Willis,* 760 S.W.2d at 647; *Hall,* 919 S.W.2d at 468; *see also Archambault v. Archambault,* 846 S.W.2d 359, 360 (Tex.App.—Houston [14th Dist.] 1992, no writ) (holding defendant must prove when cause of action accrued and negate discovery rule if pleaded). Vanasek did not plead discovery. Therefore, movants had to show only that Vanasek failed to commence his DTPA action within two years after the date on which the allegedly false, misleading, or deceptive acts or practices occurred. Vanasek did not commence this action until April 6, 1994.

I conclude the summary judgment evidence shows that Vanasek knew of the acts or practices about which he complains in this lawsuit more than two years before filing his lawsuit. Consequently, I would overrule Vanasek's fourth point of error to the extent he complains summary judgment was improper because limitations did not bar his DTPA claims.